UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WILLARD GATISS PUTMAN,

                Petitioner,

v.

SHANE JACKSON,

                Respondent.

_____/

Case No. 1:16-cv-1026

Honorable Paul L. Maloney

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Willard Gattiss Putman is incarcerated with the Michigan Department of Corrections at Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan.  Following a jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC-I), Mich. Comp. Laws § 750.520b, and five counts of second-degree criminal sexual conduct (CSC-II), Mich. Comp. Laws § 750.520c. The jury was not able to reach a verdict on two additional counts of CSC-I.  Those charges were dismissed at Petitioner's sentencing hearing.  (Sentencing Tr., ECF No. 10-11, PageID.1529-1530.)  On May 9, 2012, the court sentenced Petitioner to concurrent prison terms of 25 to 75 years on each CSC-I count and 10 to 15 years on each CSC-II count.

On August 11, 2016, Petitioner filed his habeas corpus petition.  Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner placed his petition in the prison mailing system on August 11, 2016.  (Pet., ECF No. 1, PageID.14.)

The petition raises ten grounds for relief, as follows:

I.      Contrary to Supreme Court precedents the Court of Appeal[]s erroneously denied Petitioner's argument that the trial court abused its discretion in allowing prejudicial testimony to be introduced through defense witness urologist Dr. Kevin Brewton of statement the Petitioner made to him and to the admission of hearsay statements by Nurse Van Order pursuant to MRE 803(4).

II.     Petitioner's fundamental due process rights were denied him where the trial court denied him a full, fair, complete, and meaningful consideration, in a meaningful manner, at a meaningful time by virtue of failing to uphold the oath taken by all court officers to uphold the constitutional prophylactics, when failing to address the obvious egregious violations "su[a] sponte" which are of record, compounding that error with a boiler plate rubber stamp and denying an evidentiary hearing to substantiate "gross" ineffective assistance of trial and appellate counsel claims and "gross" "long standing" prosecutorial misconduct claims therein raising a serious question as to the integrity of the state[']s judiciary and appeal's corrective process.

III.    The state court[]s made an erroneous determination where denying Petitioner a full, fair, complete, and meaningful consideration where Petitioner was denied his due process right to present a defense where he was not informed by law enforcement, the prosecution, or defense counsel of his statutory right to submit a to a polygraph examination, therein obviating the need for trial in the first place, undermining the public[']s faith in the integrity of the state[']s judiciary and appeals process.

IV.     Petitioner was denied a full, fair, complete, and meaningful consideration where he was denied fundamental due process protections to a fair trial as guaranteed under both state and federal constitutions, when the trial court arraigned Petitioner without first having acquired subject matter jurisdiction over Petitioner, creating a jurisdictional defect, that voids Petitioner's conviction, thereby undermining the public[']s faith in the integrity of the state[']s judiciary and appeals process.

V.      The state court[]s made an erroneous determination and denied Petitioner a full, fair, complete, and meaningful consideration, in a meaningful manner where Petitioner was denied state and federal constitutional rights to due process where the prosecutor during closing argument (A) prejudicially misrepresented and distorted facts in evidence; (B) prejudicially misled the jury by arguing facts not in evidence, therein vouching for the credibility of her witnesses, and (C) denigrated the defense and defense counsel and gave her personal opinion as to a material fact in question[,] therein undermining the public[']s faith in the integrity of the state[']s judiciary and appeals process.

VI.     The state court[]s made an erroneous determination and denied Petitioner a full, fair, complete, and meaningful consideration, in a meaningful manner where

2

Petitioner was denied due process as guaranteed under the Michigan and United States constitution[s] where the trial court neglected its ministerial duty when allowing so called other-act evidence based upon a subverted interpretation by the prosecution as to the dictates of the statute Mich. Comp. Laws § 768.27a and Michigan Rule of Evidence 404(b)[,] therein undermining the public[']s faith in the integrity of the state[']s judiciary and appeals process.

VII.    The state court[]s made an erroneous determination and denied Petitioner a full, fair, complete, and meaningful consideration, in a meaningful manner where Petitioner was denied due process as guaranteed under the Michigan and United States constitution[s] where trial counsel abandoned defendant in his representation as enumerated herein, the result of which is structural error undermining the public[']s faith in the integrity of the state[']s judiciary and appeals process.

VIII.    The state court[]s made an erroneous determination and denied Petitioner a full, fair, complete, and meaningful consideration, in a meaningful manner where Petitioner was denied due process as guaranteed under the Michigan and United States constitution[s] where the trial court failed to control the proceedings and insure defendant received a fair trial[,] therein undermining the public[']s faith in the integrity of the state[']s judiciary and appeals process.

IX.    The state court[]s made an erroneous determination and denied Petitioner a full, fair, complete, and meaningful consideration, in a meaningful manner where Petitioner was denied due process as guaranteed under the Michigan and United States constitution[s] where appellate counsel "sandbagged" and failed to master the trial record and raise meritorious "dead bang winner" issues on Petitioner's appeal as of right.

X.    Petitioner has met the burden of cause and prejudice under Mich. Ct. R. 6.508(D) in this matter.

(Pet., ECF No. 1-6, PageID.233-235.)  Respondent has filed an answer to the petition (ECF No. 9) stating that the grounds should be denied because they are noncognizable on habeas review, meritless, or procedurally defaulted.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit.  Accordingly, I recommend that the petition be denied.

**Discussion**

I.      Factual Allegations

The principal victim (AI), Petitioner's great-granddaughter, provided testimony during the first two days of his five-day trial.  AI testified that she and her family moved in to Petitioner's home when she was seven or eight years old.  (Trial Tr. I, ECF No. 10-6, PageID.776.) Petitioner's home is in Calhoun County, not Kalamazoo County.  Shortly after they moved in, she and Petitioner were watching television in the living room.  (*Id.*, PageID.776-777.)  Petitioner invited AI to sit in his lap.  (*Id.*, PageID.777.)  He changed the television from cartoons to porn. (*Id.*, PageID.779-780.)  He pulled down her pants and attempted to penetrate her anally.  (*Id.*, PageID.778.)  AI testified that "[i]t wouldn't go in . . . because my butt's small."  (*Id.*)  AI said something like that happened "almost every day" until she finally disclosed the abuse following a camping trip with Petitioner in Kalamazoo County during August of 2011.  (*Id.*, PageID.781.)

AI matter-of-factly described the various ways Petitioner sexually abused her during that week-long camping trip.  Petitioner touched AI's chest, butt, and vagina with a small vibrator.  (*Id.*, PageID.801.)  He lubricated a larger vibrator and attempted to insert it into AI's vagina.  (*Id.*, PageID.810-811, 814; Trial Tr. II, ECF No. 10-7, PageID.847.)  It only went in an inch or two.  (Trial Tr. I, ECF No. 10-6, PageID.810-811.)  Petitioner breathed heavily and called her a "sexy bitch" as he moved the vibrator back and forth.  (*Id.*, PageID.814-815.)  Petitioner performed cunnilingus on AI.  (*Id.*, PageID.817)  Afterward, he provided her a douche, so she would "smell good."  (*Id.*, PageID.818-819.)  Petitioner also penetrated AI's vagina with his hand. (*Id.*, PageID.820.)  Petitioner attempted to insert his penis in AI's vagina.  (*Id.*, PageID.822.)  AI reported it only went in about an inch.  (*Id.*, PageID.822-824.)  AI also indicated that Petitioner put the small vibrator up her butt.  (*Id.*, PageID.825, 830.)  AI said Petitioner tried to put the larger vibrator in her butt, but that hurt bad.  (*Id.*, PageID.827-828.)  Petitioner also sucked on AI's

4

breasts, (*Id.*, PageID.829); held AI's hand on his penis and used it to masturbate, (Trial Tr. II, ECF No. 10-7, PageID.844-845); and forced AI's mouth over his penis until "yellow stuff came out in [her] mouth[,]" (*Id.*, PageID.845-846).

AI described other events that occurred with Petitioner in Petitioner's home in Calhoun County.  (Trial Tr. II, ECF No. 10-7, PageID.848-852, 892.)

After the camping trip, AI sent a note to her step-grandfather indicating that Petitioner had touched her inappropriately.  (*Id.*, PageID.883-884.)  AI was asked why she finally reported Petitioner after years of abuse.  (*Id.*, PageID.884.)  AI referred back to an incident during the camping trip.  Petitioner had also, on the camping trip, squeezed AI's cousin's chest and then asked her cousin if that "felt good."  (Trial Tr. I, ECF No. 10-6, PageID.832.)  AI said she told because: "I didn't want him to touch anybody else. . . he had already done it to [her cousin on the camping trip.]"  (Trial Tr. II, ECF No. 10-7, PageID.884.)  She was worried about her other young cousins.  (*Id.*, PageID.884-885.)

AI's disclosure resulted in Petitioner being charged with four counts of CSC-I and 5 counts of CSC-II for his conduct in Kalamazoo County.  In addition to hearing testimony from AI, the jury heard testimony from AI's mother, AI's brother, AI's step-grandfather, AI's cousin, the owner of the camper, a forensic scientist from the Michigan State Police laboratory, police officers and state troopers who participated in the investigation, AI's sexual assault nurse examiner, AI's forensic interviewer, an expert regarding child abuse, two of Petitioner's treating physicians, Petitioner's wife's caretaker, Petitioner's wife, Petitioner's daughter, two of Petitioner's sons, Petitioner's son-in-law, and Petitioner's daughter-in-law.  The jury began deliberations after lunch on Friday, April 27, 2012.  It did not return its partial verdict until the morning of Tuesday, May 1, 2012.

Petitioner, with the assistance of counsel, directly appealed his convictions raising just one issue, the issue listed as Habeas Issue I above.  The Michigan Court of Appeals affirmed the trial court by opinion issued August 15, 2013.  Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising the same issue.  The supreme court denied leave by order entered January 31, 2014.

Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.3.)  Instead, on September 8, 2014, he filed a motion for relief from judgment in the trial court raising the issues identified as Habeas Issues III-IX above.  (Pet'r's Mot. for Relief from J., ECF No. 10-14, PageID.1677-1678.)  By order entered September 15, 2014, the trial court denied relief because Petitioner could have, but did not raise the issues on his direct appeal and had failed to demonstrate cause for that failure or resulting prejudice to excuse his default.  (Kalamazoo Cnty. Cir. Ct. Order, ECF No. 10-15, PageID.1797-1798.)  Petitioner offered as cause the ineffective assistance of his appellate counsel.  The trial court rejected that claim stating "the 'issues' he seeks to raise . . . quite simply lack merit, and could have subjected appellate counsel to sanctions for pleading frivolous claims if he had raised them."  (*Id.*, PageID.1798.)

Petitioner filed an application for leave to appeal the trial court's decision in the Michigan Court of Appeals.  (Appl. for Leave to Appeal, ECF No. 10-16, PageID.1800-1863.) Petitioner raised all of the issues he had raised in the trial court plus two more, the issues identified as Habeas Issues II and X above.  (*Id.*, PageID.1801-1802.)  Petitioner also moved to remand for a *Ginther* hearing and to disqualify the trial judge.  The Michigan Court of Appeals denied all of Petitioner's requests for relief by order entered April 27, 2015.  (Mich. Ct. App. Order, ECF No. 10-16, PageID.1799.)  Petitioner then sought leave to appeal in the Michigan Supreme Court.  That

6

court denied leave by order entered March 8, 2016.  (Mich. Order, ECF No. 10-17, PageID.1870.) This petition followed.

II.    AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-382; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court

precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Procedural Default

Petitioner raised Habeas Issues III-IX for the first time in his motion for relief from judgment.  The trial court refused to consider any of Petitioner's issues because he had failed to

raise them on his direct appeal and had failed to establish either good cause for that failure or resulting prejudice.  (Kalamazoo Cnty. Cir. Ct. Order, ECF No. 10-15, PageID.1797-1798.)   The court rejected Petitioner's claims under Michigan Court Rule 6.508(D)(3).  (*Id.*)

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  Here, the last reasoned state-court decision is the trial court's order resolving Petitioner's motion for relief from judgment.

There is no question that Petitioner failed to comply with the requirement to raise his post-judgment motion issues on direct appellate review; thus, he failed to follow the state procedural rule.  The state court expressly relied upon Petitioner's default in denying his claim.  It is also beyond dispute that the procedural rule is an adequate and independent ground for denying relief.  A rule is an adequate and independent ground when it was "firmly established and regularly followed" at the time of the asserted procedural default.  *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).  Mich. Ct. Rule 6.508(D)(3)

"was firmly established and regularly followed . . . and was an adequate and independent state ground for denying review." *Gates v. Hoffner*, No. 17-2198, 2018 WL 1614261, at *2 (6th Cir. Mar. 23, 2018) (citing *Simpson v. Johnson*, 238 F.3d 399, 407 (6th Cir. 2000)).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Petitioner may contend he is actually innocent; however, he does not offer any new reliable evidence to support his claim. Accordingly, to avoid the procedural default bar, Petitioner must show cause for his default and resulting prejudice, coincidentally the same showing he was required to make under Michigan Court Rule 6.508(D)(3) to convince the state trial court to consider his claims.

Petitioner offers as cause here the same cause he offered in the state trial court: the ineffective assistance of his appellate counsel. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or

fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

In evaluating the effectiveness of Petitioner's appellate counsel, the state trial court looked to the merits of Petitioner's defaulted claims, concluded they were frivolous, and found it was not unreasonable for appellate counsel to forego such frivolous claims.  To evaluate whether the trial court's determinations are factually reasonable on the record and legally reasonable applications of *Strickland*, this Court must examine, at least to some extent, the merits of those claims.  Under the circumstances, simply addressing the merits at the outset may be simpler.

The U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also*

11

28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default.  *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

IV.    The Polygraph (Habeas Issue III)

Petitioner argues that the courts, the prosecutor, and his defense counsel failed him because they never informed Petitioner of his right to submit to a polygraph examination. Petitioner suggests that such an examination would have obviated the need for trial.

The trial court rejected Petitioner's claim as frivolous.  Whether considered through the lens of prosecutorial misconduct or ineffective assistance of counsel, to succeed on his claim, clearly established federal law would require that Petitioner demonstrate prejudice.  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (court held that for relief to be granted on a claim of prosecutorial misconduct, the misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *Strickland*, 466 U.S. at 687-688 (court held that counsel's deficient performance must prejudice the defendant resulting in an unreliable or fundamentally unfair outcome).

The Supreme Court has never held that, as a constitutional matter, polygraph evidence must be admitted in a criminal trial or that polygraph evidence is reliable.  *See United States v. Scheffer*, 523 U.S. 303, 309 (1998); *United States v. Thomas*, 167 F.3d 299, 308 n.8 (6th Cir. 1999) (noting that the Supreme Court in *Scheffer* "acknowledged that there is no

consensus in the scientific community that polygraph evidence is reliable, and that there is no constitutional right to have polygraph evidence admitted at trials").  The admissibility of polygraph evidence is generally a state law matter which does not raise issues of constitutional magnitude cognizable on habeas review.  *See Bolton v. Berghuis*, 164 F. App'x 543, 550 (6th Cir. 2006); *Maldonado v. Wilson*, 416 F.3d 470, 477–78 (6th Cir. 2005) (collecting cases); *see also Poole v. Perini*, 659 F.2d 730, 734–35 (6th Cir. 1981).  Accordingly, to the extent that Petitioner claims that he was entitled to a polygraph examination under state law, he is not entitled to relief from this Court because such a claim is not cognizable upon federal habeas review.

Petitioner's claim that he was denied due process or his right to present a defense also fails.  Michigan law provides that a defendant charged with first-degree criminal sexual conduct "shall be given a polygraph examination or a lie detector test if the defendant requests it . . . ." Mich. Comp. Laws § 776.21.  Even if Petitioner had requested a polygraph examination, Petitioner has not provided any evidence he would have passed it.  "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted).  Moreover, even if Petitioner would have passed a polygraph examination, the results of a polygraph examination are inadmissible at trial under Michigan law.  *See People v. Phillips*, 666 N.W.2d 657 (Mich. 2003); *People v. Jones*, 662 N.W.2d 376 (Mich. 2003).  Thus, even if the prosecutor and/or counsel erred by failing to offer Petitioner the opportunity to take a polygraph test, Petitioner cannot show the requisite prejudice to the trial result.  In short, Petitioner is not entitled to habeas relief on his due process claim relating to a polygraph examination.

V.    Subject Matter Jurisdiction (Habeas Issue IV)

Petitioner next contends he was denied due process when the trial court arraigned him without ever acquiring subject matter jurisdiction over him.  The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts.  *Wills v. Egeler*, 532 F. 2d 1058, 1059 (6th Cir. 1976).  It is well-settled that a purported violation of state law does not provide a basis for federal habeas relief.  *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.*  Here, the state court determined that Petitioner's jurisdictional challenge was frivolous.  Thus, there were no jurisdictional defects.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *Estelle,* 502 U.S. at 68.   The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  Specifically, with regard to jurisdictional issues, the Sixth Circuit has stated that "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review."  *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).  This Court is bound by the state court's determination that jurisdiction over Petitioner was established.  This ground for habeas relief is accordingly rejected.

14

VI.    Evidentiary Errors (Habeas Issues I and VI)

A.    **Other Bad Acts**

The prosecutor provided notice that she intended to introduce evidence under Mich. Comp. Laws § 768.27a and/or Mich. R. Evid. 404(b) of Petitioner's sexual abuse of AI at Petitioner's home in Calhoun County, even though those claims were not the subject of the Kalamazoo County prosecution.  (Jan. 27, 2012, Mot. Hr'g Tr., ECF No. 10-5.)  Section 768.27a(1) of the Michigan Compiled Laws provides "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."  Mich. Comp. Laws § 768.27a(1).  Michigan Rule of Evidence 404 provides:

> **(a)    Character evidence generally.**  Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except . . . [in four specific instances including] . . . Evidence of the character of a witness [for truthfulness] as provided in Rules 607, 608, and 609.
>
> **(b)    Other crimes, wrongs or acts.**
>
> (1)    Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Mich. R. Evid. 404.  The prosecutor argued that some of Petitioner's conduct at his home in Calhoun County would fall into the category of "another listed offense" and be admissible under the statute.  She argued that the evidence made admissible by the statute would also be admissible, along with other conduct (i.e., grooming behavior, showing AI porn, kissing AI, sleeping with AI), under the rule to show Petitioner's motive, intent, preparation and plan.

The trial court expressed concern that the jurors might be confused by evidence regarding sexual acts that were not part of the Kalamazoo charges.  (Jan. 27, 2012, Mot. Hr'g Tr., ECF No. 10-5, PageID.518.)    Nonetheless, the court accepted the prosecutor's arguments regarding the admissibility of the evidence under the statute and the rule and determined further that any danger of confusion that might otherwise warrant exclusion under Michigan Rule of Evidence 403 could be addressed with a relevant curative instruction.  (*Id*., PageID.524-530.)

In the state courts, Petitioner raised his challenge to the admission of this evidence principally as a violation of a general statute regarding the judge's obligation to control the admission of evidence, Mich. Comp. Laws § 768.29.  In this Court, Petitioner argues the trial court's failure to control the admission of this evidence rendered his trial unfair and violated his right to due process.

The admissibility of the evidence under Mich. Comp. Laws § 768.27a, Mich. Comp. Laws § 768.29, or Michigan Rules of Evidence 404(b) and 403, presents purely issues of state law.  As noted above, it is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright*, 464 U.S. at 84.  Thus, the Michigan court's initial determination that the "other acts" evidence was admissible under Mich. Comp. Laws § 768.27a, and Michigan Rule of Evidence 404(b) despite Michigan Rule of Evidence 403, and its further determination that Petitioner's subsequent challenge was frivolous, conclusively resolves those state law issues.

That leaves Petitioner to the very limited review afforded to state-court evidentiary rulings under the Due Process Clause.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and

conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552.  Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner has not met this difficult standard.  There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence.  In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  *Estelle*, 502 U.S. at 75.  The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id.* at 75 n.5.  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  The Sixth Circuit has also found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh*, 329 F.3d at 512. Petitioner's habeas challenge to the admissibility of the "other acts" evidence, whether that

evidence was admitted in the form of victim testimony, certified conviction record, or reference to other pending charges, is without merit.

### B.    Testimony of Nurse Van Order

Nurse Phyllis Van Order, a Sexual Assault Nurse Examiner (SANE), examined AI on September 3, 2011, a couple of days after AI disclosed the abuse.  (Trial Tr. III, ECF No. 10-8, PageID.1301.)  When Nurse Van Order offered testimony regarding AI's statements during the examination, Petitioner's counsel objected, arguing that the statements were hearsay and <u>not</u> admissible as statements made to obtain medical diagnosis and treatment, as suggested by the prosecutor.  ((*Id.*, PageID.1303-1304.)  Nurse Van Order, however, had prefaced her testimony regarding AI's statement by stating that she questioned AI for the purpose of medical diagnosis and treatment.  (*Id.*, PageID.1302-1303.)  For that reason, the trial court concluded the testimony was not excluded by the hearsay rule under Michigan Rule of Evidence 803(4).  (*Id.*, PageID.1304.)  The Michigan Court of Appeals concluded the trial court got it right:

> Putman next argues that the trial court erred when it permitted Van Order to offer inadmissible hearsay testimony.  "'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  MRE 801(c).  Hearsay is generally not admissible, unless it is offered under one of the exceptions.  *See* MRE 802.  One such exception is for statements made for purposes of medical treatment or diagnosis, which includes statements "describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment."  MRE 803(4).  "[T]he identification of the assailant is necessary to adequate medical diagnosis and treatment" of the patient.  *People v. Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992).  "Particularly in cases of sexual assault in which the injuries might be latent . . . a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment."  *People v. Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011).
>
> In this case, the factors relevant to assessing whether the exception applies favored the admission of this testimony.  *See Meeboer*, 439 Mich. at 324–325.  Van Order testified that AI used the words "boobs" and "dingy," showing the use of terminology not unexpected for a child of similar age.  Van Order also suggested

that AI was sent to the nurse for examination according to the hospital's procedures, indicating that AI's diagnosis or treatment continued with Van Order's examination.  This examination also revealed AI to still be suffering from the effects of a possible sexual assault.  Additionally, the examination occurred long before trial, and the person AI identified as her assailant was clearly of close relation to her.  All of these aspects support the admissibility of AI's statements to Van Order.  *Id.*  Additionally, though EI may have taken AI to the hospital at the direction of Child Protective Services, the record shows that this did not extinguish the medical character of the examination.  *See People v. Van Tassel (On Remand)*, 197 Mich App 653, 661; 496 NW2d 388 (1992); *Meeboer*, 439 Mich at 335.  Therefore, the trial court did not abuse its discretion by admitting this testimony under the hearsay exception.

(Mich. Ct. App. Op., ECF No. 10-12, PageID.1533-1534.)  That decision binds this Court with regard to the admissibility of the evidence under state law.  *See Wainwright*, 464 U.S. at 84.

Moreover, Petitioner has failed to demonstrate that the admission of Nurse Van Order's testimony regarding AI's statements violated the Due Process Clause.  The Supreme Court has never recognized that the Constitution is violated by the admission of unreliable hearsay evidence.  *Desai v. Booker*, 732 F.3d 628, 630-31 (6th Cir. 2013).  Instead, the Supreme Court has merely "h[e]ld out the possibility that 'the introduction' of 'evidence' in general could be 'so extremely unfair that its admission violates fundamental conceptions of justice.'"  *Id.* at 631 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quotation omitted)).  Such a standard is highly general.  *Id.*  "'The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations,'—and, it follows, the less likely a state court's application of the rule will be unreasonable."  *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Here, as in *Desai*, the state court held that the admission of the "out of court" statements fell within an established hearsay exception—in this case for statements made for purposes of medical treatment.  (Trial Tr. III, ECF No. 10-8, PageID.1304; *see also* Mich. R. Evid. 803(4).)  "Where, as here, a state court reasonably rejects a rule urged by the claimant but yet to be adopted by the Supreme Court, it does not unreasonably apply established federal law."  *Id.* at 632 (citing *Knowles v.*

19

*Mirzayance*, 556 U.S. 111, 122 (2009)).  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### C.    Testimony of Dr. Brewton

Dr. Kevin Brewton was Petitioner's urologist.  He was presented as a defense witness for the purpose of informing the jury about Petitioner's penile implant.  Even though Dr. Brewton was a defense witness, the prosecutor asked Dr. Brewton more questions than did defense counsel.  She asked about the operation of Petitioner's penile implant, Petitioner's ability to masturbate or ejaculate without a functioning implant, and about Petitioner's vasectomy.  (Trial Tr. III, ECF No. 10-8, PageID.1111-1117.)  The prosecutor then sought to question Dr. Brewton about the doctor's notes regarding a conversation with Petitioner that preceded the vasectomy procedure.  (*Id*.)  Defense counsel objected, arguing that the testimony the prosecutor sought to elicit was irrelevant and, if relevant, more prejudicial than probative.  (*Id*., PageID.1117-1120.)

The trial court concluded that the testimony was relevant and not more prejudicial than probative.  (*Id*., PageID.1120-1121.)  The court overruled the objection and the jury heard this testimony:

> Prosecutor:    Doctor, could you share the information with us that Mr. Putman shared with you prior to obtaining the surgery?
>
> Dr. Brewton:  Outside of having a non-functioning previous implant, he was in a relationship, being married at the time, that his wife wasn't really interested in sex, but he wanted to proceed with surgery in reference to his failed implant because in the future he was going to probably be seeking out another relationship and wanted to have his previous implant revised and undergo a vasectomy.
>
> Prosecutor:    So did you perform a revision of his implant?
>
> Dr. Brewton:  Yep, the old one was removed and the new one was replaced.
>
> Prosecutor:    And did you also perform a vasectomy on him at that time?
>
> Dr. Brewton:  Yes.

Prosecutor:     What was his age at that time?

Dr. Brewton:  I believe he was in his seventies.

Prosecutor:     Is that common to perform a vasectomy on a 70-year-old?

Dr. Brewton:  Not often, no.

(*Id*., PageID.1122-1123.)

On appeal, Petitioner challenged the trial court's admission of the evidence claiming that it was irrelevant, more prejudicial than probative, and also violated Rule 404(b) as an "other bad act" introduced for an improper purpose.  (Pet'r's Br. on Appeal, ECF No. 10-12, PageID.1564-1567.)  The court of appeals disagreed:

> Generally, all relevant evidence is admissible.  *See* MRE 401; MRE 402.  Evidence concerning a defendant's character is, however, not admissible to prove that the defendant acted in conformity with his or her character.  MRE 404(a); *Roper*, 286 Mich App at 91.  Similarly, a prosecutor cannot present evidence that the defendant engaged in other bad acts in order to show that the defendant has a propensity to commit bad acts.  MRE 404(b)(1).  Even if evidence is relevant to something other than character, it "may still be inadmissible if the probative value of the evidence 'is substantially outweighed by the danger of unfair prejudice . . . .'"  *People v. Yost,* 278 Mich App 341, 407; 749 NW2d 753 (2008), quoting MRE 403 and citing *People v. VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993).

> Here, Putman argues that the urologist's testimony was impermissible evidence of a prior bad act-namely, his "dishonest behavior toward his wife."  However, the challenged evidence was his statement that he intended to find a sexual partner outside his marriage and a statement of intent is not evidence of a particular act.  Thus, MRE 404(b) does not apply.  Moreover, this evidence was relevant for a purpose other than to show bad character.

> The charges in this case included acts of penile penetration.  Putman, in part, challenged the prosecutor's case by presenting evidence that he was medically infirm, which gave the impression that he was incapable of such sexual acts.  The statement that he intended to find a sexual partner and wanted his penile implant corrected to permit sexual function is evidence that, despite his ailments, Putman remained physically capable of a full range of sexual conduct and continued to seek fulfillment of his sexual desires.  Therefore, the proffered testimony was relevant to prove something other than character.  While his statement of intent might implicate character in a broader sense, the very essence of this case was an allegation that he had illicit sexual relations.  In addition, because there was evidence that suggested that Putman might be incapable of performing the charged

21

sexual acts despite AI's testimony to the contrary, whether Putman had the physical capability to engage in the acts was highly relevant.  Therefore, on this record, we cannot conclude that the probative value of this testimony was substantially outweighed by the danger of unfair prejudice.  MRE 403; *Roper*, 286 Mich App at 106.

The trial court did not abuse its discretion by permitting the urologist's testimony.

(Mich. Ct. App. Op., ECF No. 10-12, PageID.1532-1533.)

The appellate court's determinations of fact relating to the relevance of this evidence are reasonable on the record before this Court.  The court of appeals' legal conclusions regarding the admissibility of this evidence are binding on this Court.  *See Wainwright*, 464 U.S. at 84.  Petitioner does not identify any clearly established federal law to which the state court's decision is contrary or that the state court unreasonably applied to make its determination.  Moreover, as noted above, even if this were "other bad acts" evidence introduced to show Petitioner's action in conformity, it would not warrant habeas relief.  Petitioner, therefore, is not entitled to habeas relief on this claim.

## VII.   Prosecutorial Misconduct (Habeas Issue V)

To be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative

instruction was given by the court.  *See id.* at 12-13;  *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).

Here, the state court was never called upon to directly consider Petitioner's prosecutorial misconduct claims on the merits.  The trial court only considered the claims to determine if appellate counsel should have raised the claims on appeal.  In that context, the state court concluded the claims were frivolous.

### A.      Vouching

During the prosecutor's closing argument, she gave the jury ten reasons to believe the testimony of AI and her cousin.  In the process of providing the first reason—the children testified that they knew they would get in trouble if they lied—defense counsel objected that the prosecutor was vouching for her witnesses.  (Trial Tr. IV, ECF No. 10-9, PageID.1433-1434.)  The trial court overruled the objection because "[the prosecutor was] not lending the credibility of her

office to [the witnesses]; she's telling [the jurors] why they should [believe the witnesses.]"  (*Id.*, PageID.1434.)  In other words, the prosecutor was drawing the jurors' attention to the evidence that supported the credibility of the victims.  That is not vouching.

The federal courts have generally recognized two types of objectionable vouching. *See Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008); *Brown v. McKee*, 231 F. App'x 469, 478 (6th Cir. 2007) (citing *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)); *but see Wogenstahl v. Mitchell*, 668 F.3d 307, 328-29 (6th Cir. 2012) (treating the two aspects of vouching as part of a single standard).  The first type impermissibly places the government's prestige behind the witness to bolster the witness' credibility.  *Francis*, 170 F.3d at 550; *United States v. Carroll*, 26 F.3d 1380, 1388-89 (6th Cir. 1994); *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992).  In the second type of impermissible vouching, also known as bolstering, the prosecutor invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt.  *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965);  *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955).

Neither type of objectionable vouching is apparent in the argument excerpts of which Petitioner complains.  The state court's rejection of Petitioner's vouching claim is, therefore, not contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B.    Denigrating the Defense and Defense Counsel

A prosecutor is free to argue from the evidence that certain defense witnesses are lying but may not denigrate the defense or defense counsel.  *See Hanna v. Price*, 245 F. App'x 538, 545-46 (6th Cir. 2007); *Bates v. Bell*, 457 F.3d 501, 525 (6th Cir. 2006).  Petitioner claims

24

the prosecutor crossed the line in argument when she characterized the defense counsel's argument as "trying to take you off on bunny trails."  Petitioner also complains that the prosecutor told the jury she personally believed Petitioner was a "dirty old man."

1.    Bunny trails

The prosecutor argued in rebuttal:

> [Defense counsel] is trying to take you off on bunny trails.  We're on a bear hunt here.  I'm a big dog lover.  There are dogs that are trained to hunt bear.  You take the dogs out, they pick up the scent, they follow the scent, they stay on the path. There are bunny trails off to the side where rabbits have been running.  You don't want those dogs going off on the rabbit trails.  You want 'em to stay on the bear. We're hunting bear here.  Don't get caught off on these bunny trails.

(Trial Tr. IV, ECF No. 10-9, PageID.1468.)

Not every aspersion cast by a prosecutor upon a defense attorney's presentation of a case requires reversal of the guilty verdict.  *See Young*, 470 U.S. at 11 (stating that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial").  "A prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *United States v. August*, 984 F.2d 705, 715 (6th Cir. 1992); *see also Brown*, 231 F. App'x at 480 (a prosecutor's isolated comments in closing argument that the defense was attempting to trick the jury is not an improper disparagement of defense counsel).  Here, after offering the jury the bear hunting analogy, the prosecutor proceeded to review defense counsel's argument point by point and identify the points that were "bunny trails"—points that did not impact whether or not the prosecutor had proven beyond a reasonable doubt that Petitioner was guilty of the charged crimes.

(Trial Tr. IV, ECF No. 10-9, PageID.1468-1474.)  That is not the sort of excessive argument or invitation to ignore the search for truth that warrants habeas relief.

Moreover, even had the prosecutor's comments been improper, they were not flagrant enough to justify habeas relief.  *See Henley v. Cason*, 154 F. App'x 445, 447 (6th Cir. 2005).  The prosecutor's comments were not so incendiary as to inflame the jury's passion or distract them from determining petitioner's guilt or innocence.  *See Davis v. Burt*, 100 F. App'x 340, 348 (6th Cir. 2004). When combined with the instruction from the trial judge that the attorneys' arguments, questions, and statements were not evidence (Trial Tr. IV, ECF No. 10-9, PageID.1476), the prosecutor's comments did not render the entire trial fundamentally unfair. *Byrd*, 209 F.3d at 533.

### 2.    Dirty old man

During defense counsel's closing, he argued "I suspect what the Prosecution is trying to do with some of these pictures is try to impart that somehow my client's just a dirty old man." (Trial Tr. IV, ECF No. 10-9, PageID.1464.)  The prosecutor responded in rebuttal: "Defense counsel references the lubrication packets in the photo in the drawer in the RV and the fact that we're trying to say that this is a dirty old man who has lotion in the RV and that that all comes into play here.  I didn't suggest that, although I may believe that."  (*Id*., PageID.1471.)  Petitioner challenges the propriety of the prosecutor's statement that she believes he is a "dirty old man."

The Court agrees that the prosecutor probably crossed the line with the addition of her snide, gratuitous afterthought.  But, defense counsel had already accused the prosecutor of portraying Petitioner as a dirty old man.  The defense introduced the "dirty old man" idea to the jurors.  Moreover, in the context of a trial where a prepubescent girl testified over the course of two days that Petitioner, her great-grandfather, repeatedly sexually abused her for years in almost

26

every imaginable way, the prosecutor's isolated barb seems tame.  Finally, mere moments after the comment, the jury heard the trial court's cautionary instruction regarding what is and is not evidence.  Under these circumstances, the Court concludes that the prosecutor's comment did not render Petitioner's trial fundamentally unfair.

### C.     Misrepresenting/distorting facts or arguing facts not in evidence

A prosecutor is not limited to simply recounting the evidence during closing argument.  She may also argue reasonable inferences from the evidence.  *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).  Nonetheless, it is unquestionably improper for a prosecutor to argue facts not in evidence.  *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004) (citing *Berger*, 295 U.S. at 78).  Petitioner attacks the prosecutor's closing because she misrepresented facts, distorted facts, and argued facts not in evidence.

Petitioner's claims are unfounded.  Petitioner picks through the record and focuses only on the evidence that might favor his position; then, if the prosecutor argued any facts or invited any inferences that run counter to Petitioner's selective reading of the evidence, he declares the argument inappropriate.  The Court has reviewed each of Petitioner's claims and each follows that pattern.  By way of example, Petitioner claims the prosecutor presented the jury with facts not in evidence or misrepresented facts when she argued "[AI] said the yellow glue-like stuff went into her mouth and she wiped her mouth with a paper towel."  (Trial Tr. IV, ECF No. 10-9, PageID.1445.)  Petitioner insists AI testified she spit the "stuff" on the sheets.  There is certainly testimony to support Petitioner's claim.  But, there is also testimony to support the prosecutor's argument.  AI testified as follows:

| | |
|---|---|
| Prosecutor: | Now, you said it went in your mouth and you spit it out? |
| AI: | Yes. |
| Prosecutor: | Did you wipe it anywhere else to get it off you? |

27

| | |
|---|---|
| AI: | I like took a paper towel and then-.  Because like he had paper towels over on the side.  There was paper towels on the thing. |
| Prosecutor: | Yeah. |
| AI: | And then I took one and then I wiped it and it still didn't work so I got a drink. |

(Trial Tr. II, ECF No. 10-7, PageID.903.)

It is true that AI never said she wiped her mouth with a paper towel.  Nonetheless, it is a fair inference that if she wiped something with a paper towel and the ineffectiveness of that action prompted her to take a drink to remedy the problem, that the something she wiped with the paper towel was her mouth.  Defense counsel's arguments regarding this event said nothing about the paper towel.  It centered entirely on AI's statement that she spat the "stuff" onto the sheet. (Trial Tr. IV, ECF No. 10-9, PageID.1452.)  Defense counsel never even mentions the paper towel. His argument is not a misrepresentation or a distortion either.  The prosecutor and defense counsel each presented to the jury the evidence, and inferences therefrom, that favored his or her position. That is fair argument.  Petitioner's challenges to the prosecutor's factual representations during her closing and rebuttal are entirely without merit.  He is not entitled to habeas relief on this claim.

VIII.    Ineffective Assistance of Counsel (Habeas Issues VII, IX, and X)

A.    **Trial Counsel**

Petitioner contends that his trial counsel rendered constitutionally ineffective assistance for failing to address the issues identified above (polygraph, jurisdiction, prosecutorial misconduct, other bad acts evidence) and two others: (1) counsel failed to obtain and present an expert witness to testify regarding sexual abuse disclosure to counter the prosecution's expert witness on that topic; and (2) counsel failed to object to references to Petitioner being in jail pending trial of his criminal case.  To prevail on his claims, Petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's

deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687-88. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

With regard to the issues already addressed above (polygraph, jurisdiction, prosecutorial misconduct, other bad acts evidence) Petitioner cannot show that counsel was ineffective for failing to raise them, or failing to raise them effectively, because, as a matter of state law, the state court has determined them to be frivolous and, as a matter of federal constitutional law, this Court has concluded they are without merit. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

The other two issues are addressed below.

1.      Failure to call an expert

The prosecutor presented testimony from Southwest Michigan Children's Trauma Assessment Center Clinical Director Connie Black-Pond as an expert in the assessment and

treatment of children and adults who have been sexually abused or traumatized.  (Trial Tr. II, ECF No. 10-7, PageID.1063.)  Ms. Black-Pond testified that, despite suffering trauma in the form of sexual abuse, children may appear normal and often do not disclose their abuse immediately.  (*Id*., PageID.1065.)  She also testified about the forensic interviewing protocol employed in Michigan.  (*Id*., PageID.1067-1068.)  Ms. Black-Pond testified that traumatized children may be better able to recall details as their stress reaction reduces over time.  (*Id*., PageID.1077.)

Petitioner contends his counsel should have presented expert testimony to counter the testimony of Connie Black-Pond.  "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.  Here, Petitioner's failure to demonstrate prejudice is evident.  There is nothing in the record as to what testimony an expert might have provided. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted); *see also Paillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said. Speculation cannot suffice to establish the requisite prejudice.").  Petitioner offers only speculation; that is manifestly insufficient.  He is not entitled to habeas relief on his claim that his trial counsel was ineffective for failing to call an expert witness to counter Ms. Black-Pond.

2.    References to Petitioner's pretrial detention

Petitioner next complains that his counsel rendered ineffective assistance because counsel failed to object to references to Petitioner's pretrial detention during witness testimony. During AI's mother's testimony, the prosecutor asked her if Petitioner spent much time with AI and her siblings.  (Trial Tr. I, ECF No. 10-6, PageID.738)  She responded "Yes ma'am.  Well, til he got incarcerated."  (*Id.*)  The second reference was made by Petitioner's counsel in a question to the same witness.  He was trying to demonstrate the witness's bias by exploring her tactics in a civil suit she had filed against Petitioner.  Counsel asked "Your grandfather's been locked up since September right? . . . Why did you feel the need that his assets . . . be frozen when he was in jail?" (*Id.*, PageID.760-762.)

Respondent argues that counsel's failure to object to the first comment was strategic—he did not want to draw attention to it.  (Respondent's Answer, ECF No. 9, PageID.373.)  It is more likely, however, that counsel avoided the objection because he intended to use Petitioner's detention, and the fact that detention rendered Petitioner effectively powerless, to highlight the money-grubbing behavior of AI's mother who initiated a civil suit against Petitioner and attempted to secure his property for her benefit while he sat in jail.  Thus, counsel's own reference to Petitioner's detention was obviously strategic.  Counsel was using it to demonstrate AI's mother was a biased witness.  Counsel explained that strategy to the trial court when the prosecutor objected to the line of questioning regarding the civil suit.  (Trial Tr. I, ECF No. 10-6, PageID.766.)

A passing reference to Petitioner's pretrial detention came up again during AI's testimony.  (Trial Tr. II, ECF No. 10-7, PageID.915.)  Then, it came up again during the testimony of Petitioner's physician, Dr. Mark Henry.  Dr. Henry testified that Petitioner suffered from a

variety of medical difficulties.  (Trial Tr. III, ECF No. 10-8, PageID.1125-1130.)  He said that he had seen Petitioner almost monthly for the last four years (*Id.*, PageID.1127), but the last visit was in July 2011 (*Id.*, PageID.1134.).   The prosecutor left the definite impression that Petitioner stopped coming after four years because he felt much better.  (*Id.*)  Petitioner's counsel intended to argue that Petitioner was simply too medically fragile to do all of the activities AI had described. Thus, counsel had to explain why Petitioner had not seen the doctor from July of 2011 through May of 2012.  So, counsel, during redirect, posited that Petitioner stopped coming because he was forced into jail.  (*Id.*, PageID.1134-1135.)

Counsel explained his rationale during the testimony of Petitioner's daughter.  The fact that Petitioner was detained came up again during her testimony in the questions posed by the jurors.  (*Id.*, PageID.1191.)  The trial court asked counsel if it was acceptable to pose the question. (*Id.*)  Counsel said it was acceptable because he had already raised it.  (*Id.*)  The trial court even commented that it was odd to present that information when the court was going to great lengths so the jury did not see Petitioner in jail clothes and belly chains.  (*Id.*)  Counsel explained that he had to make the difficult decision during the doctor's testimony to explore the issue, again.  (*Id.*, PageID.1191-1192.)  He clearly did not want to do so, but he obviously considered the doctor's testimony regarding Petitioner's infirmities to be of greater value to Petitioner's defense.

Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance.  *Strickland*, 466 U.S. at 689.  Petitioner has not offered any evidence to rebut the presumption that counsel's trade-off was not sound trial strategy.  Accordingly, the Court will not second-guess counsel's strategic decision here.  Petitioner is not entitled to habeas relief on this claim.

### B.    Appellate Counsel

Petitioner claims appellate counsel rendered ineffective assistance because he did not raise the "dead bang winner" issues discussed above.  The state court has declared, at least as a matter of state law, those issues are frivolous.  This Court concludes, as a matter of federal law, that the issues are without merit.  Appellate counsel's failure to raise frivolous and meritless issues on appeal is neither professionally unreasonable nor prejudicial.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### IX.    Boiler Plate Rubber Stamp and Failure to Control the Proceedings (Habeas Issues II and VIII)

Petitioner complains that the trial court acted as a "boiler plate rubber stamp" in resolving Petitioner's motion for relief from judgment because the court failed to hold an evidentiary hearing to provide the necessary support for Petitioner's ineffective assistance of counsel and prosecutorial misconduct claims.  Petitioner echoes that sentiment in his claim that the trial court failed to control the proceedings in that the court permitted the ineffective assistance of trial counsel and prosecutorial misconduct to occur.  Because Petitioner's ineffective assistance of counsel and prosecutorial misconduct claims are meritless, these derivative claims are meritless as well.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.

33

*Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated:  October 10, 2018                             /s/ Ray Kent
                                                      United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).